862 F.2d 316
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry S. GRABDA, Plaintiff-Appellant,
v.
BROWN-FORMAN DISTILLERS CORPORATION, a foreign corporation,
Defendant-Appellee.
 No. 84-1121.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1988.
 
 Before MILBURN, Circuit Judge and CELEBREZZE and CONTIE,* Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Henry S. Grabda appeals from the summary judgment and the jury verdict entered in favor of his former employer, defendant Brown-Forman Distillers Corporation ("Brown-Forman" or "Company"), in this wrongful discharge action. On appeal, Grabda asserts that the district court improperly granted Brown-Forman's motion for summary judgment on his breach of contract claim, erred in failing to reinstate his contract claim at the close of the evidence, abused its discretion in not dismissing two jurors for cause, erroneously refused to grant a directed verdict on his retaliation claim, and erred in admitting prejudicial hearsay testimony. Finding no merit in Grabda's assignments of error, we affirm.
 
 
 2
 Brown-Forman distributes liquor products nationwide through various subsidiaries and divisions. The Company hired Grabda as a Michigan liquor salesman in 1968. In 1979 Brown-Forman acquired the Southern Comfort Corporation, which resulted in duplicate sales forces in Michigan. Brown-Forman responded to this inefficiency by disbanding its Michigan sales force, which had consisted of five salesmen, and laying off three salesmen, including Grabda. The Company arranged for all three, however, to work for the independent broker that took over the distribution of Brown-Forman products in Michigan. The remaining two Michigan salesmen were transferred to other sales positions with the Company.
 
 
 3
 Grabda initiated this suit alleging that Brown-Forman breached his employment contract by laying him off without cause and by failing to offer him another sales position in the Company, committed age discrimination, and violated Michigan's Elliott-Larsen Civil Rights Act, see Mich.Comp.Laws Ann. Secs. 37.2202 & 37.2701(a). The district court granted Brown-Forman's motion for summary judgment on the breach of contract claim, and after trial the jury returned a verdict in favor of Brown-Forman on the age discrimination and retaliation claims. Grabda timely appealed.
 
 
 4
 This appeal was originally argued on June 6, 1985. On August 14, 1986, an order was issued by the court holding the case in abeyance pending the outcome of Boynton v. TRW, Inc., No. 83-1773 (6th Cir. Oct. 6, 1988) (en banc). Since the en banc decision in Boynton has recently been issued, we are now able to address finally the merits of Grabda's appeal.
 
 
 5
 Grabda first contends that the district court incorrectly granted summary judgment on his claim that Brown-Forman breached his employment contract by laying him off without cause. Although an employee in Michigan can generally be discharged for any reason, see Authier v. Ginsberg, 757 F.2d 796, 798 (6th Cir.), cert. denied, 474 U.S. 888 (1985), statements of company policy may create implied contract rights, see Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 614-15, 292 N.W.2d 880, 890 (1980). In this case, Grabda asserts that genuine issues of fact existed concerning whether under the terms of his employment contract he could be laid off only for cause, and whether Brown-Forman's decision to disband its Michigan sales force constituted sufficient cause to discharge him. See Fed.R.Civ.P. 56(c). The district court rejected Grabda's contentions and entered summary judgment in favor of Brown-Forman. We now affirm.
 
 
 6
 In Boynton we held that a "just cause" contract implied under the Toussaint doctrine does not afford the employee protection from layoffs in a reduction in force situation that is prompted solely by economic considerations. See Boynton, slip op. at 8-13. As we stated in Boynton, "we find no support for the proposition that the soundness of a management decision to effect a reduction in force solely by reason of adverse economic circumstances is also subject to jury review." Id. at 12. These principles are dispositive of Grabda's challenge to the justness of his discharge. There is no dispute that Grabda's termination was effected solely as a result of Brown-Forman's business decision to eliminate all five of its Michigan sales positions, and Grabda has not suggested that Brown-Forman disbanded its Michigan sales force as a pretext to discharge Grabda for some reason related to his performance. In fact, the record discloses that he was an exemplary employee who won several sales awards. Thus, Grabda's position is merely that Brown-Forman's decision to disband the Michigan sales force was not "just cause" for his termination, an argument precluded by Boynton. As we stated in Boynton, we will not imply an employment contract "guarantee[ing] permanent employment regardless of changes in economic conditions, absent specific language to that effect." Id. (emphasis added). Because we find no such "specific" guarantee here, we hold that the district court properly granted summary judgment on Grabda's challenge to the justness of his dismissal.
 
 
 7
 As the Boynton court also noted, however, this holding does not prevent the discharged employee from challenging the procedure used by his employer in terminating him. Id. at 13-20 (reviewing employee's claim that company had a policy of laying off employees strictly on a seniority basis). In the instant case, Grabda contends that Brown-Forman had a policy of offering comparable jobs within the Company to personnel whose positions had been eliminated, and that the Company breached this policy by not offering him another position. The only evidence before the district court on Brown-Forman's motion for summary judgment, however, was the Company's interrogatory answer in which it admitted to a "common practice ... to seek to find other work either within the corporation, if the employee was willing to relocate to the geographical area where such work was available, or with an outside broker, such as, for example, the broker to which the sales had been transferred" (emphasis added). The record clearly discloses, however, that Brown-Forman complied with this "common practice" by finding Grabda a position with the broker that took over the Michigan sales territory. Accordingly, no "breach" of the asserted policy occurred, and summary judgment was therefore appropriate.
 
 
 8
 Grabda attempted to resurrect this claim at trial on the basis of one statement by Brown-Forman's president, Mr. Schusterman, who responded affirmatively when asked by Grabda's attorney whether Brown-Forman had a "policy" of offering displaced employees jobs within the company. The district court refused to permit amendment under Rule 15(b), Fed.R.Civ.P., solely on the basis of this statement, and we agree. The parties had stipulated before trial that the Toussaint question was not before the court, and therefore, that no evidence would be introduced on the "just cause" issue. Mr. Schusterman's testimony of an internal transfer policy was thus not intended to be probative of the alleged "just cause" contract; rather, it was relevant to Grabda's age discrimination claim. Cf. Cioffe v. Morris, 676 F.2d 539, 542 (11th Cir.1982). In addition, the statement was merely one isolated response to a leading question in over 1700 pages of trial testimony. Under these circumstances, we cannot say that whether the Company's internal transfer policy created an enforceable contract right under Toussaint was an issue "tried by express or implied consent of the parties." Fed.R.Civ.P. 15(b). Accordingly, the district court did not abuse its discretion in refusing to permit amendment under Rule 15(b). See Banque de Depots v. National Bank of Detroit, 491 F.2d 753, 757 (6th Cir.1974).
 
 
 9
 Grabda next asserts that the district court committed reversible error in not dismissing two jurors for cause. At voir dire Grabda's attorney asked two jurors whether they would hire an equally qualified 21 year old or 60 year old man who had applied for the same position. Both jurors answered that they would consistently hire the younger person. The district court, although failing to inquire further into possible age bias on the part of the jurors, asked the jurors if they could put aside any preconceived notions and decide the case solely upon the facts presented and instructions given, to which each juror responded affirmatively. Grabda argues that the district court prejudiced his case by not removing the jurors for cause because this forced his attorney to exercise two peremptory challenges to remove the allegedly biased jurors. We disagree.
 
 
 10
 As an initial matter, we do not believe that the question propounded by plaintiff's counsel was effective at eliciting age bias. The jurors indicated that the reason they would select the younger man over the older was due to the longer job potential for the younger person, which is a practical business consideration. Moreover, the question concerns a hiring situation while this case concerns a layoff situation. The jurors' preference for hiring the younger person does not inexorably lead to the conclusion that they would discharge an older, and presumably more experienced, employee, the scenario at issue here. Furthermore, even if the question effectively elicited some evidence of bias, the jurors affirmative assertions that they could decide the case based solely upon the evidence adduced at trial effectively negated any inference of bias. See United States v. Giacalone, 588 F.2d 1158, 1162-64 (6th Cir.1978), cert. denied, 441 U.S. 944 (1979). Finally, since Grabda was able to strike the two jurors from the jury, and he does not challenge any juror who actually sat on his case, "there is even less merit to the suggestion that in some indistinct way, [Grabda's] exhaustion of his peremptory challenges and his inability to exercise more in some way entitles him to a new trial." Id. at 1164. We therefore hold that the district court did not abuse its broad discretion, see United States v. Mitchell, 556 F.2d 371, 379 (6th Cir.), cert. denied, 434 U.S. 925 (1977), in refusing to dismiss the two jurors for cause.
 
 
 11
 Grabda also contends that the district court erroneously denied his motion for a directed verdict on his retaliation claim. See Mich.Comp.Law Ann. Secs. 37.2202, 37.2701(a) (employer cannot retaliate against employee for filing an age discrimination claim). Grabda relies on a conversation which he had with two Brown-Forman employees, Arch Stinson and Egan Bernas, during which Bernas stated that Grabda "shut the door" to any future employment at Brown-Forman by filing age discrimination charges against the Company. In addition, when future positions at Brown-Forman became available Grabda did not receive a job offer. Grabda argues that based upon this evidence reasonable jurors could only conclude that Brown-Forman was retaliating against him for filing the age discrimination action. However, this was not the only testimony adduced at trial. Bernas also testified that the statement he made to Grabda was only his opinion and that he had no authority to hire personnel. Viewing this testimony and the record as a whole in the light most favorable to Brown-Forman, we conclude that reasonable jurors could differ on whether Bernas' statement represented Brown-Forman's official position. See Hersch v. United States, 719 F.2d 873, 876-77 (6th Cir.1983). Accordingly, the district court properly submitted Grabda's retaliation claim to the jury.
 
 
 12
 Finally, Grabda maintains that the district court committed reversible error in allowing hearsay statements into evidence pertaining to his age discrimination claim. Specifically, he objects to the trial testimony of McLean Stinson, Brown-Forman's State Manager, who stated that he was told by Gardner DeWitt, Brown-Forman's Regional Manager, that one of the displaced Michigan salesmen was transferred pursuant to Brown-Forman's affirmative action program. This testimony undermined Grabda's contention that the Company's failure to transfer him was motivated by age bias. The district court allowed the testimony into evidence reasoning that it was admissible as a statement by an agent. See Fed.R.Evid. 801(d)(2)(D).
 
 
 13
 Grabda contends that Stinson's testimony was inadmissible hearsay and that he was prejudiced by its admission into evidence because he was thereby precluded from cross-examining the person who originally made the contested statement, Gardner DeWitt. On the facts of this case, however, Grabda's claim of prejudice is not persuasive. Subsequent to Stinson's testimony, DeWitt also testified in person for several days and was subject to extensive cross-examination by Grabda's attorney. Grabda's claim that he did not have the opportunity to cross-examine DeWitt, therefore, is without merit. Under these circumstances, we find no reversible error in the court's evidentiary decision.
 
 
 14
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Leroy J. Contie, Jr., assumed senior status effective July 1, 1986